2020 IL App (1st) 190011

SIXTH DIVISION
June 30, 2020

No. 1-19-0011

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MANSOUR MOHAMMAD, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CH 16963 |
| | ) | |
| THE CHICAGO POLICE DEPARTMENT, | ) | Honorable |
| | ) | Peter Flynn, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Connors and Harris concurred in the judgment.

**O R D E R**

¶ 1    *Held*:    Where plaintiff failed to show that there was a genuine issue of material fact as to whether defendant complied with his FOIA request, the circuit court's grant of summary judgment in favor of defendant is affirmed.

¶ 2    Plaintiff, Mansour Mohammad, appeals from the circuit court's grant of summary judgment in favor of defendant, the Chicago Police Department (CPD), finding that no genuine issue of material fact existed as to whether the CPD complied with Mr. Mohammad's request under the under the Illinois Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2016)). On

appeal, Mr. Mohammad argues that this grant of summary judgment was in error because (1) the CPD has not fully discharged its obligation to him under FOIA, (2) the documents that the CPD provided to Mr. Mohammad were improperly redacted, (3) the CPD intentionally violated FOIA in bad faith and therefore should incur civil penalties, and (4) there is outstanding discovery material relating to a genuine factual issue. For the following reasons, we affirm.

¶ 3                                                    I. BACKGROUND

¶ 4      The following chronology is taken from Mr. Mohammad's complaint, the CPD's motion for summary judgment, Mr. Mohammad's response to that motion, and relevant attachments to those filings.

¶ 5      In September 2016, Mr. Mohammad filed a FOIA request with the CPD, asking for all police reports for case No. 09 CR 08678. The CPD responded on September 28, 2016, providing 60 pages of responsive records. On October 26, 2016, Mr. Mohammad filed another FOIA request with the CPD, specifically asking for "all inventory reports, general progress reports, general offense case reports, investigative reports, patrol division canvass worksheets, supplementary reports, written notes, written statements, not limited to, but including all responsive records prepared by or for, or used by, received by, in the possession of, or under the control of any public body," and "any and all emails relating to" case No. 09 CR 8678.

¶ 6      After requesting multiple extensions, on December 27, 2016, Officer Gary Rubenstein, a CPD FOIA officer, responded to Mr. Mohammad's second request. In the letter accompanying the response, Officer Rubenstein indicated that his request was interpreted "to be for the Bureau's Area Investigative File," and that the CPD was releasing 242 pages of responsive records. He further stated that "[s]hould specific information listed in our request not be found in this record, it means that CPD has no responsive record for that specific request." Officer Rubenstein also

stated that the 242 pages had been redacted pursuant to sections 7(1)(b), (c), and (d) of FOIA (5 ILCS 140/7(1)(b), (c), (d) (West 2016)), and listing the specific types of information that had been redacted and why.

¶ 7      Mr. Mohammad requested review of his FOIA request by the public access counselor at the Illinois Attorney General's Office, explaining that he did not receive all of the responsive records he requested. A representative of the Public Action Bureau (PAB) sent a letter to the general counsel of the CPD, asking the CPD to "provide detailed written explanation of why CPD construed the request as limited to the Area Investigative File and whether CPD possesses the records Mr. Mohammad identified as missing from his Request for Review." The CPD did not respond.

¶ 8      On July 20, 2017, the PAB representative wrote to both the general counsel of the CPD and to Mr. Mohammad, stating in part that "although it [wa]s unclear whether CPD possesses the records Mr. Mohammad claims he should have received," the CPD's lack of response to the PAB inquiry "did not demonstrate that it conducted a reasonable search for the responsive records." She thus found that the CPD had violated the requirements of FOIA. She also stated, however, that resolution of the matter did not require "the issuance of a binding opinion" and the letter served to close the matter.

¶ 9      No further action was taken with respect to this FOIA request by any party until December 26, 2017, when Mr. Mohammad filed his FOIA complaint against the CPD in the circuit court requesting that the CPD be (1) enjoined from withholding the records he requested, (2) ordered to fully release the requested records, and (3) civilly penalized for between $2500 and $5000 under section 11 of FOIA (5 ILCS 140/11 (West 2016)), for acting in bad faith or willfully or intentionally failing to comply with FOIA.

¶ 10    On August 14, 2018, the CPD filed its motion for summary judgment. In it, the CPD argued it was entitled to summary judgment because (1) it had fully discharged its obligations under FOIA by providing Mr. Mohammad with the records that were responsive to his request, (2) any redactions made were permitted by FOIA, and (3) no civil penalty was appropriate since it did not violate FOIA. The CPD attached to that motion an affidavit from Officer Rubenstein, in which he attested that he had been the CPD FOIA officer since July 2016, that the FOIA officer has the responsibility of "reviewing, analyzing and responding to" FOIA requests, that upon receipt of a FOIA request he "analyze[s] the plain language of the request to determine if CPD maintains the documents requested and if so, whether CPD is still in possession of the requested records and finally, whether any portions of those records are exempt from disclosure pursuant to available FOIA exemptions." Officer Rubenstein stated that he was the officer originally assigned to Mr. Mohammad's FOIA request and that he noted the records Mr. Mohammad was requesting concerned his murder case and that, in his experience as the CPD FOIA officer, "when a FOIA request concerns major crimes, like [Mr. Mohammad's] murder case, the documentation will be found with the Detectives Division." Officer Rubenstein explained that each case is identified with a unique Records Division (RD) number and he learned the RD number associated with Mr. Mohammad's case was HP445128. He then requested the "full Investigative File" associated with that RD number from the Bureau of Detectives. After redacting information exempt from release under FOIA, Officer Rubenstein "forwarded copies of the 242 pages of responsive records to Mr. Mohammad."

¶ 11    Also attached to the CPD's summary judgment motion was the request that Officer Rubenstein sent to the Bureau of Detectives and the response from the chief of the Bureau of Detectives. In his request, Officer Rubenstein asked for records that "relate[d] to a 2009 homicide

4

investigation under RD-HP445128," including the investigative file and the "Permanent Retention File" which he indicated would include "Inventory Reports, General offense case reports, investigative reports, canvass worksheets, Supplementary Reports, written notes, [and] written statements." The response to that request stated: "Attached please find the responsive reports obtained from records in regard to the request for a copy of the homicide file under RD#HP445128."

¶ 12    Mr. Mohammad responded to the motion for summary judgment, arguing that (1) the CPD had not discharged its duty under FOIA, (2) the records produced by the CPD were unresponsive to his request and too heavily redacted, and (3) the CPD's "bad faith" in responding to his requests required the civil penalties Mr. Mohammad asked for in his complaint. Mr. Mohammad also argued that the circuit court should deny summary judgment to the CPD because there was "outstanding discovery material to a genuine factual issue."

¶ 13    On November 28, 2018, the circuit court entered a three-page written order granting the CPD's motion for summary judgment. In the order, the court noted that the PAB representative's issue with the CPD was "its failure to communicate whether it had conducted a reasonable search and its failure to respond" to the representative's inquiry. The court said, however, the CPD had "remedied that failure by providing the affidavit of the FOIA officer overseeing the search." Although it acknowledged that it would have been "preferable" for the CPD to have provided that information to the PAB representative, the circuit court concluded that "the approach taken by CPD, though not desirable, was adequate under the circumstances." This appeal followed.

¶ 14                        II. JURISDICTION

¶ 15    Mr. Mohammad timely filed his notice of appeal from the circuit court's dismissal of his complaint against the CPD on December 24, 2018. Accordingly, this court has jurisdiction

pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 16                                    III. ANALYSIS

¶ 17    On appeal, Mr. Mohammad contends that the circuit court erred in granting summary judgment in favor of the CPD because (1) the CPD has not fully discharged its obligation to him under FOIA, (2) the documents that the CPD provided to Mr. Mohammad were improperly redacted, (3) the CPD intentionally violated FOIA in bad faith and therefore should incur civil penalties, and (4) there is outstanding discovery material relating to a genuine factual issue.

¶ 18    "Summary judgment is proper when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Bremer v. City of Rockford*, 2016 IL 119889, ¶ 20 (quoting 735 ILCS 5/2-1005(c) (West 2012)). "The purpose of summary judgment is not to try an issue of fact but to determine whether one exists." *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed, or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." (Internal quotation marks omitted.) *Id.* "In ruling on a motion for summary judgment, we must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22. We review a grant of summary judgment *de novo*. *Id.*

¶ 19    Pursuant to FOIA, the public policy in Illinois is that "all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of the Act."

5 ILCS 140/1 (West 2018). "The General Assembly patterned FOIA after the federal FOIA." *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 54 (comparing 5 ILCS 140/1 *et seq.* (West 2014), with 5 U.S.C. § 522 (2012)). "Due to the similarity of the statutes, Illinois courts often look to federal case law construing the federal FOIA for guidance in construing FOIA." *Id.* ¶ 55. We consider each of Mr. Mohammad's arguments in turn.

¶ 20                    A. The CPD Fully Discharged Its Obligations Under FOIA

¶ 21     Mr. Mohammad's primary argument is that the CPD has not provided all responsive records that are in its possession. According to Mr. Mohammad, despite his "descriptive and clear" request, the 242 pages supplied in response to his request did not include crime scene photographs prepared or created by the CPD, any copies of handwritten or typed records made by reporting/responding Officers Deborah Bollinger or Ladonna Simmons, copies of the CPD event query, any handwritten or typed notes created by the CPD detectives from their interviews with complaining witness Bobby Peak, or copies of emails produced by the CPD pertaining to Mr. Mohammad's case number. However, this argument rests on a misperception about what FOIA requires.

¶ 22     "The adequacy of an agency's search for documents under the FOIA is judged by a standard of reasonableness and depends on the facts of each case." *Maynard v. C.I.A.*, 986 F.2d 547, 559 (1st Cir. 1993). "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, not conclusory, and submitted in good faith." *Miller v. U.S. Department of State*, 779 F.2d 1378, 1383 (8th Cir. 1985). "Agency affidavits are accorded a

7

presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." (Internal quotation marks omitted.) *SafeCard Services, Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Despite this presumption, "the burden remains on the government to demonstrate that it has thoroughly searched for the requested documents where they might reasonably be found." *Miller*, 779 F.2d at 1383. Ultimately, "[t]he crucial issue is not whether relevant documents might exist, but whether the agency's search was reasonably calculated to discover the requested documents." (Internal quotation marks omitted.) *Maynard*, 986 F.2d at 559. If the government shows "by convincing evidence that its search was reasonable, *i.e.*, that it was especially geared to recover the documents requested, then the burden is on the requester to rebut that evidence by a showing that the search was not in fact in good faith." *Miller*, 779 F.2d at 1383.

¶ 23    The CPD has met its burden in this case of showing that its search was reasonable. Officer Rubenstein detailed in his affidavit his process for reviewing FOIA requests, that in his experience all of the documents Mr. Mohammad requested would be found with the Detectives Division, and that he then requested the "full Investigative File" for Mr. Mohammad's case from that division, resulting in the 242 pages sent to Mr. Mohammad. The facts in the affidavit are supported by Officer Rubenstein's request for the records from the Bureau of Detectives, and the response from the bureau indicating that it contained the "responsive reports" associated with Mr. Mohammad's case.

¶ 24    Because the CPD showed that its search was reasonable, the burden then shifted to Mr. Mohammad to show that Officer Rubenstein's search was not in good faith. To do so, Mr. Mohammad must have "raise[d] a substantial and material factual issue in regard to the reasonableness of the search" by either "contradicting the defendant['s] account of the search

procedure or by raising evidence of the defendant['s] bad faith." *Miller*, 779 F.2d at 1384. Mr. Mohammad failed to do so here.

¶ 25    Mr. Mohammad attempts to meet this burden by arguing that there were records presented in his criminal trial that were not provided to him in response to his FOIA request, such as photographs and videos of the crime scene. However, the fact that such documents may have at one point existed and were not included in the FOIA response does not demonstrate a failure to comply with FOIA. The plaintiff in *Miller* made a similar argument to the one Mr. Mohammad makes here, but the Eighth Circuit Court of Appeals was unconvinced, noting:

> "[T]he standard of reasonableness which we apply to agency search procedures does not require exhaustion of the files; instead, it requires a search reasonably calculated to uncover the sought materials. The fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. Thus, the Department is not required by the Act to account for documents which the requester has in some way identified if it has made a diligent search for those documents in the places in which they might be expected to be found." *Id.* at 1384-85.

¶ 26    The documents Mr. Mohammad seeks and did not receive may have existed, but that does not mean the CPD currently possesses them or has a reasonable method to access them and provide them to Mr. Mohammad. Based on the evidence before us, the CPD has shown it discharged its obligation to Mr. Mohammad to conduct a reasonable search for the documents requested.

¶ 27                    B. The CPD's Redactions Did Not Violate FOIA

¶ 28    Mr. Mohammad also argues that the CPD violated FOIA because the documents provided were "so heavily redacted [he] could not determine what or whom the record pertained to." He

argues that the information contained in these redactions was not exempt from disclosure under FOIA and the redactions "denied [his] right for access" to public records.

¶ 29    The CPD relies on three FOIA exemptions for these redactions; sections 7(1)(b), (c), and (d). These provisions specifically exempt "[p]rivate information, unless disclosure is required by another provision of this Act" (5 ILCS 140/7(1)(b) (West 2016)), "[p]ersonal information contained within public records, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" (*id.* § 7(1)(c)), and records in the possession of a law enforcement agency created for law enforcement purposes, "but only to the extent that disclosure would" either "endanger the life or physical safety of law enforcement personnel or any other person" or "unavoidably disclose the identity of a confidential source, confidential information disclosed by a confidential source, or persons who file complaints with" the law enforcement agency (*id.* § 7(1)(d)(iv), (vi)). FOIA specifically defines an "unwarranted invasion of personal privacy," for the purposes of section 7(1)(c), as "the disclosure of information that is highly personal or objectionable to a reasonable person and in which the subject's right to privacy outweighs any legitimate public interest in obtaining the information." *Id.* § 7(1)(c).

¶ 30    In Illinois, FOIA exemptions "are to be construed narrowly." *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶ 34. "If the public body seeks to invoke one of the exemptions in section 7 as grounds for refusing disclosure, it is required to give written notice specifying the particular exemption claimed to authorize the denial." (Internal quotation marks omitted.) *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 464 (2003). "Thereafter, if the party seeking disclosure of information under the Act challenges the public body's denial in circuit court, the public body has the burden of proving that the records in question fall within the exemption it has claimed" by clear and convincing evidence. *Id.*; 5 ILCS

140/1.2 (West 2016).

¶ 31    Officer Rubenstein provided a detailed explanation for the redactions in the letter that accompanied the responsive records: under section 7(1)(b) of FOIA he redacted "[a]ny unique identification number of an arrestee, and any CPD personnel unique identification numbers like employee user code numbers and unique handwritten signatures"; under section 7(1)(c) he redacted "any names identified as victims and witnesses, and the identifying information of these individuals," including their birth dates; and under section 7(1)(d) he redacted "[c]ertain factual information and the names of individuals who provided information" to the CPD.

¶ 32    Mr. Mohammad does not dispute that the redactions fall within these exemptions. Rather, he argues that the CPD's exemptions under section 7(1)(b) were overridden by two other exemptions—sections 7(1)(e-9) and (e-10)—because 7(1)(b) provides that private information is exempt "unless disclosure is required by another provision of this Act." Sections 7(1)(e-9) and (e-10), however, are not FOIA provisions that require disclosure such that they could override the section 7(1)(b) exemption. Rather, sections 7(1)(e-9) and (e-10) are exemptions for records requested by a person "committed to the Department of Corrections" that pertain to victims or law enforcement records of other people which are exempt from disclosure "except as may be relevant to a requester's current or potential case or claim." 5 ILCS 140/7(1)(e-9), (e-10) (West 2016). The CPD did not rely on the exemptions in section 7(1)(e-9) or (e-10) and they have nothing to do with Mr. Mohammad's FOIA request.

¶ 33    Mr. Mohammad also argues that because the CPD disclosed "the very same records" that he sought to the Cook County State's Attorney's Office "subject to full disclosure of the records' content and information," which were then disclosed to the defense upon prosecution of case No. 09 CR 8678, the CPD waived its right to claim that same information is exempted from FOIA

disclosure. This court has held, however, that whether waiver applies " 'requires consideration of the circumstances related to the disclosure, including the purpose and extent of the disclosure as well as the confidentiality surrounding the disclosure.' " *Chicago Alliance For Neighborhood Safety v. City of Chicago*, 348 Ill. App. 3d 188, 202 (2004) (quoting *Mobil Oil Corp. v. United States Environmental Protection Agency*, 879 F.2d 698, 700 (9th Cir. 1989)).

¶ 34    The fact that information was provided in discovery in a criminal case does not mean that information loses its FOIA exempt status. *Cvijanovich v. United States Secret Service*, 410 F. Supp. 3d 1085, 1092 (D.N.D. 2019). As the United States District Court for North Dakota in *Cvijanovich* observed when considering a similar argument to the one Mr. Mohammad makes here:

> "The Supreme Court has held that a document may be exempted from disclosure under FOIA even if it was discoverable in previous litigation. [Citation.] Moreover, the distinction between criminal and civil proceedings is significant: '[D]isclosure in criminal trials is based on different legal standards than disclosure under FOIA, which turns on whether a document would usually be discoverable in a civil case. Similar documents, in other words, are not—indeed must not be—treated similarly in the two different types of proceedings.' " *Id.* at 1092-93 (quoting *Williams & Connolly v. S.E.C.*, 662 F.3d 1240, 1245 (D.C. Cir. 2011)).

See also *Turner v. Joliet Police Department*, 2019 IL App (3d) 170819, ¶¶ 15-16 (noting that Illinois Supreme Court Rule 415(c) (eff. Oct 1, 1971) "prohibits a criminal defendant represented by counsel from possessing discovery documents, such as police reports," and that therefore the fact that documents were disclosed to an attorney in a criminal case did not mean they could not be exempt under FOIA.)

¶ 35    In short, even if the CPD provided unredacted versions of some records that Mr. Mohammad is now requesting to the State's Attorney's Office which then provided them to the defense during the prosecution of case No. 09 CR 8678, that does not mean that the CPD has waived its right to claim an exemption from disclosure in response to Mr. Mohammad's FOIA request. The CPD has shown, as a matter of uncontested fact, that the redactions were proper under the FOIA exemptions cited.

¶ 36            C. Mr. Mohammad is Not Entitled to Penalties or Discovery

¶ 37    Because Mr. Mohammad has not established a violation of FOIA by the CPD, he is not entitled to civil penalties. In addition to his arguments for penalties based on an insufficient search and overbroad redactions, Mr. Mohammad argues that the CPD's response of 60 pages to his September 2016 request for "all police reports," when it sent 242 pages in response to his later request, proves that the CPD acted in bad faith in responding to his initial request. But Mr. Mohammad's later request was far broader and more detailed in specifying a number of documents other than the police reports he was requesting in his September 2016 request. The more limited response to a more limited request is not evidence that the CPD acted in bad faith.

¶ 38    Mr. Mohammad's final claim is that summary judgment was improper because "there is outstanding discovery material to a genuine factual issue." Mr. Mohammad argues that discovery might have revealed that the CPD had other responsive records in a "permanent retention file" or in some other files that were not searched or produced.

¶ 39    "A trial court is vested with broad discretion in ruling on discovery matters," and a court's exercise of that discretion will not be reversed on appeal unless it was abused. (Internal quotation marks omitted.) *BlueStar Energy Services, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 990, 996 (2007). In addition, because agency affidavits are accorded a presumption of good faith,

" 'discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face.' " *Id.* at 997 (quoting *Carney v. United States Department of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)). "When this is the case, the trial court may 'forgo discovery and award summary judgment on the basis of affidavits.' " *Id.* (quoting *Carney*, 19 F.3d at 812).

¶ 40    Mr. Mohammad's reliance on Officer Rubenstein's reference to a "permanent retention file" and to the possibility that responsive records might be in other files is not persuasive. In Officer Rubenstein's request for records from the Bureau of Detectives, he asked for the "Investigative File and Permanent Retention File." In his affidavit, however, Officer Rubenstein explained that he knew all the responsive records that the CPD had were in the investigative file, which is what he gave to Mr. Mohammad. Nothing in the affidavit, or in the stray reference to a "permanent retention file," suggests that other responsive records could have been or would have been located there or elsewhere.

¶ 41    Here, since we agree with the circuit court that Officer Rubenstein's affidavit and the explanatory letter that accompanied the 242 pages of records that were provided in response to Mr. Mohammad's FOIA request were sufficient to meet the CPD's burden of showing a reasonable search and Mr. Mohammad's response was insufficient to call that into question, we find no abuse of discretion in the circuit court's decision to not require discovery.

¶ 42                                IV. CONCLUSION

¶ 43    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 44    Affirmed.