Joseph M. NADLER, Plaintiff–Appellee,

v.

U.S. DEPARTMENT OF JUSTICE, Federal Bureau of Investigation, Defendants–Appellants.

No. 90–5420.

United States Court of Appeals, Eleventh Circuit.

March 23, 1992.

Peter R. Maier, Leonard Schaitman, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., for defendants-appellants.

Alfred Aronovitz, Miami, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, EDMONDSON, Circuit Judge, and DYER, Senior Circuit Judge.

TJOFLAT, Chief Judge:

The United States Department of Justice (DOJ) and the Federal Bureau of Investigation (FBI) (collectively the Government) appeal from an order of the United States District Court for the Southern District of Florida compelling disclosure of certain documents relating to the Government's criminal investigation of Joseph M. Nadler. Nadler seeks disclosure of the documents pursuant to the Freedom of Information Act (the FOIA or the Act), 5 U.S.C. § 552 (1988). The Government seeks to withhold the documents under authority of Exemptions 5, 7(C), and 7(D) of the FOIA. After reviewing the withheld materials *in camera*, the district court ordered the Government to produce most of the withheld materials. Finding that the documents are exempt from disclosure under the FOIA, we reverse the district court's order compelling disclosure.

## I.

Throughout 1986, Nadler was a judge on the Dade County (Florida) Circuit Court. In August 1986, a public official, whose anonymity the Government has preserved, contacted Frederick Mann who was then an Assistant United States Attorney in the Miami Division of the Southern District of Florida. The public official informed Mann that he had reason to believe that Nadler had accepted a bribe from a litigant who had appeared before him. Mann then arranged a meeting between the public official and the FBI.

The FBI, acting under the supervision of the DOJ's Public Integrity Section, investigated the allegation. In July 1987, the investigation was terminated. The DOJ concluded that the charge against Nadler could not be substantiated and that no law enforcement action was appropriate.

During the investigation, Nadler became aware of the allegation against him and of the investigation when a reporter for the *Miami Herald* contacted him seeking his comment on the investigation. Soon thereafter, the *Miami Herald* published an article stating that Nadler was the subject of a federal investigation stemming from allegations that he had accepted a bribe.

On July 30, 1987, Nadler submitted formal requests, pursuant to section (a)(3) of the FOIA, 5 U.S.C. § 552(a)(3) (1988),[1] to the DOJ and the FBI for release of all records of the investigation. On May 26, 1988, the FBI produced to Nadler fifty pages of documents responsive to his FOIA request. Forty of these pages were produced with redactions. The Government withheld, in their entirety, an additional eighty-eight pages of responsive documents.[2] On October 4, 1988, the DOJ produced to Nadler three documents in

---

**1.** Section (a)(3) provides:

(3) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

5 U.S.C. § 552(a)(3).

**2.** Additional responsive FBI records were later located in the DOJ's files. On October 17 and 27, 1988, the FBI produced to Nadler eight pages of these records in redacted form and one page without redactions; it withheld three pages in their entirety.

their entirety and two additional documents with redactions; the DOJ withheld four responsive documents. The Government withheld or redacted information in the documents that it believed could lead to the identification of FBI agents who had participated in the investigation. The Government also withheld or redacted information supplied by sources interviewed by the FBI during the investigation and information in the documents that it believed could be expected to disclose the identities of sources in the investigation.[3]

On August 4, 1988, having exhausted his administrative remedies, Nadler filed this action under the FOIA, 5 U.S.C. § 552(a)(4)(B) (1988),[4] requesting injunctive relief to compel the DOJ and the FBI to produce in their entirety all responsive documents that they had withheld. Both Nadler and the Government stipulated that there were no facts to be contested at trial and both parties moved for summary judgment.

In support of its motion, the Government argued that it was justified under sections 5, 7(C), and 7(D) of the FOIA in not producing certain documents to Nadler. As to withholdings and redactions pertaining to the identities of FBI agents, the Government relied on Exemption 7(C) which excludes documents from the disclosure requirements of FOIA to the extent that production "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (1988). With respect to all documents withheld in whole or in part because they revealed information relating to persons who provided information during the investiga-

tion, the Government relied on both Exemptions 7(C) and 7(D). Exemption 7(D) protects from disclosure documents that "could reasonably be expected to disclose the identity of a confidential source, ... and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation ..., information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D) (1988). Finally, the Government justified withholding three documents under Exemption 5 which protects inter-agency and intra-agency memoranda or letters that would not be available by law to a party in litigation with the agency. 5 U.S.C. § 552(b)(5) (1988).

After reviewing *in camera* all of the records that the Government had withheld in whole or in part, the district court, on March 29, 1990, granted in part and denied in part the Government's motion for summary judgment and granted in part and denied in part Nadler's motion for summary judgment. The court held that the Government was justified under section 7(C) in withholding information that would reveal the names of FBI agents, Special Agents, and Supervisory Special Agents involved in the investigation.[5] The district court, however, ordered the Government to produce all other documents in full.

Addressing the Government's section 7(C) claims, the court cited a "paramount public interest in uncovering the facts of the case." The court stated that the Government could overcome this interest only by "explain[ing] why giving plaintiff Nadler the name of each person contained in their redacted records would be unwar-

---

3. Nadler was able to discover through documents obtained pursuant to his FOIA request that Mann had supplied information to the Government that led the Government to initiate its investigation into Nadler's behavior. Nadler promptly filed a civil defamation action against Mann seeking $5,000,000 as compensatory damages and an unspecified amount as punitive damages.

4. Section (a)(4)(B) provides in pertinent part:
(B) On complaint, the district court of the United States ... has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records

improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of [the FOIA], and the burden is on the agency to sustain its action.
5 U.S.C. § 552(a)(4)(B).

5. Nadler does not appeal this decision of the district court; thus, we do not address this part of the district court's order.

ranted under the particular circumstances of this case." After noting that the Government's supporting affidavits were "too general," the district court concluded that the Government had not met its burden. The district court also rejected the Government's section 7(D) Exemption claim. The court concluded that the Government had not provided any evidence that the information given to the FBI during the course of its investigation had been given in confidence.

Finally, the district court rejected without comment the Government's asserted section 5 Exemption. The district court entered final judgment on April 20, 1990 but stayed enforcement of its judgment compelling disclosure pending the outcome of the Government's appeal to this court.[6] For the reasons given below, we reject both the district court's reasoning and its conclusion that the Government incorrectly relied on Exemptions 5, 7(C), and 7(D), of the FOIA.

## II.

■ Congress enacted the FOIA to enable the public to have access to government information unnecessarily shielded from public view. *See Environmental Protection Agency v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). The Act requires federal agencies to release requested information unless the information is covered by at least one of nine statutory exemptions. In keeping with the philosophy of broad disclosure underlying the FOIA, we interpret the exemptions narrowly. *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989). Moreover, the government agency that seeks to withhold information bears the burden of proving that an exemption applies. *Id.*

## A.

We address first the Government's contention that Exemption 7(D) enables it properly to withhold the identities of persons interviewed in the course of the FBI's investigation as well as all information provided to the FBI by those sources. Section (b)(7)(D) of the FOIA exempts from mandatory disclosure

> records or information compiled for law enforcement purposes ... to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source ... and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation ..., information furnished by a confidential source....

5 U.S.C. § 552(b)(7)(D). The parties to the current dispute agree that the information withheld by the Government pursuant to Exemption 7(D) was compiled by a criminal law enforcement agency in the course of a criminal investigation. Thus, the only question before us regarding the applicability of Exemption 7(D) is whether the sources who provided information to the FBI in the course of its investigation of Nadler can be classified as confidential sources within the purview of section (b)(7)(D) of the FOIA.

■ The Government meets its burden of proof that Exemption 7(D) applies by showing either that the source provided information "under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." Conf.Rep. No. 1380, 93d Cong., 2d Sess. 13, *reprinted in* 1974 U.S.C.C.A.N. 6267, 6291; *see also L & C Marine Transport, Ltd. v. United States,* 740 F.2d 919, 923–24 (11th Cir.1984). "Confidential" in the context of Exemption 7(D) simply means "given in confidence." *L & C Marine Transport,* 740 F.2d at 925 n. 8.

The Government asserts that there is generally an implicit assurance of confidentiality given to all sources in FBI investigations. The district court rejected this argument reasoning that to deem every source

---

**6.** The district court disposed of all issues that the parties raised before it; thus, this court has jurisdiction over this appeal under 28 U.S.C. § 1291 (1988) as an appeal from a final order and judgment.

in an FBI criminal investigation a confidential source "would be to subvert the very purpose of the Act and deny plaintiff information which the Act was designed to compel." The district court would require the Government to provide direct evidence that each source understood that, in the source's own particular case, his or her identity and the information he or she provided would be held in confidence by the FBI.

The district court, while mindful of Congress' desire to avoid unnecessary shielding of government information, erred in failing to consider the factors that motivated Congress to adopt Exemption 7(D). Congress enacted Exemption 7(D) to ensure that the FOIA did not impair the ability of federal law enforcement agencies to gather information. *See Parker v. Department of Justice*, 934 F.2d 375, 380 (D.C.Cir.1991) (the legislative history of Exemption 7(D) indicates that Congress enacted the exemption "to assist federal law enforcement agencies to obtain, and to maintain, confidential sources, as well as to guard the flow of information to these agencies"); *Birch v. United States Postal Service*, 803 F.2d 1206, 1212 (D.C.Cir.1986) ("the paramount objective of Exemption 7(D) ... is to keep open the Government's channels of confidential information"); *Church of Scientology v. Department of Justice*, 612 F.2d 417, 423–26 (9th Cir.1979) (the legislative history of Exemption 7(D) demonstrates that Congress enacted Exemption 7(D) "so that law enforcement agencies would not be adversely affected in their lawful investigatory duties"); *see also* 120 Cong.Rec. 34,163–64 (1974) (joint statement of Sen. Kennedy and Rep. Moorhead) (responding to President Ford's criticism that the initial version of the FOIA would impair law enforcement efforts); *id.* at 34,167 (statement of Rep. Moorhead) (same); *id.* at 36,871 (statement of Sen. P. Hart) (same); *id.* at 36,877–78 (statement of Sen. Byrd) (same).

Senator Hart, who introduced the 1974 amendment to the FOIA, stressed that the purpose of Exemption 7 was to preserve the efficacy of investigations conducted by federal law enforcement agencies. He stated:

A question has been raised as to whether my amendment might hinder the [FBI] in the performance of its investigatory duties. The Bureau stresses the need for confidentiality in its investigations. I agree completely....

... My amendment would not hinder the Bureau's performance in any way.... [The amendment] was carefully drawn to preserve every conceivable reason the Bureau might have for resisting disclosure of material in an investigative file:

If informants' anonymity—whether paid informers or citizen volunteers—would be threatened, there would be no disclosure;

....

If disclosure is an unwarranted invasion of privacy, there would be no disclosure ...;

If in any other way the Bureau's ability to conduct such investigations was threatened, there would be no disclosure.

120 Cong.Rec. 17,040 (1974).

Despite the FOIA's fundamental principle of public access to Government documents, "statutory exemptions are intended to have meaningful reach and application." *John Doe Agency*, 493 U.S. at 152, 110 S.Ct. at 475. Aware that the release of certain types of information would harm legitimate governmental and private interests, "Congress sought 'to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy.'" *Id.* (quoting H.R.Rep. No. 1497, 89th Cong., 2d Sess. 6, *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423). As the Supreme Court has noted: "The Act's broad provisions favoring disclosure, coupled with specific exemptions, reveal and present the 'balance' Congress has struck." *John Doe Agency*, 493 U.S. at 153, 110 S.Ct. at 475.

The district court's ruling that the Government, to withhold information pursuant to Exemption 7(D), must provide di-

rect evidence of an assurance of confidentiality to each particular source does not reflect the balance struck by Congress and would unnecessarily impede law enforcement. The district court failed to appreciate the practical difficulty of justifying each use of Exemption 7(D) by way of an affidavit on personal knowledge. *See e.g., Donovan v. FBI*, 806 F.2d 55, 61 (2d Cir. 1986). Moreover, the district court erroneously refused to consider the effect that its rule would have on the FBI's ability to carry out its investigative duties. *See id.*

■ The better approach, and the one we adopt today, is to "find an assurance of confidentiality where it is reasonable to infer from the circumstances that its absence would impair the [agency's] ability to elicit the information." *Keys v. Department of Justice*, 830 F.2d 337, 345 (D.C.Cir. 1987). We are convinced that the FBI's ability to perform its investigative functions depends upon its ability to maintain the confidentiality of its sources.

The FBI has a long-standing policy of treating as confidential all information obtained during the course of an investigation. *See Londrigan v. FBI*, 722 F.2d 840, 843–44 (D.C.Cir.1983). The affidavit of Special Agent Lieberman, which the Government filed with the district court, details why the FBI strives to create and maintain an atmosphere of confidentiality whenever it solicits or receives information. According to Special Agent Lieberman, "the largest roadblock to successfully obtaining information is the source's fear of exposure...." Lieberman added: "[M]ost people expect their contact to be held in confidence by the FBI, because even the mention of one's name in connection with an FBI investigation could carry a stigma and could subject one to unnecessary public attention and harassment." Further, Lieberman commented that the FBI does not routinely raise the issue of confidentiality with those whom it interviews "because to

do so merely reminds the person of the nature of the information being provided, which can chill his ... willingness to cooperate."

We are convinced that a rule requiring the FBI to produce evidence regarding each individual source's particular expectations as to confidentiality would cause potential sources to fear that the information they relay to the FBI will become public knowledge along with their identity and the fact that they freely disclosed the information to the FBI. Moreover, it is beyond dispute that an increased fear of exposure would chill the public's willingness to cooperate with the FBI in the course of criminal investigations. Further, it seems obvious that the FBI's actual release of informants' names would deter future cooperation by those sources as well as by others. *See, e.g., Cleary v. FBI*, 811 F.2d 421, 423 (8th Cir.1987).

■ The FBI's need to maintain the confidentiality of information obtained during the course of an investigation, in order to preserve its ability to elicit public cooperation and to obtain information in the future, itself provides an implicit promise of confidentiality to interviewees. Thus, we hold that, in the absence of evidence to the contrary, "promises of confidentiality are inherently implicit in FBI interviews conducted pursuant to a criminal investigation." *Miller v. Bell*, 661 F.2d 623, 627 (7th Cir.1981), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2035, 2035–36, 72 L.Ed.2d 484 (1982); *see also Schmerler v. FBI*, 900 F.2d 333, 337 (D.C.Cir.1990); *Keys*, 830 F.2d at 345; *Donovan*, 806 F.2d at 61; *Johnson v. Department of Justice*, 739 F.2d 1514, 1518 (10th Cir.1984); *Ingle v. Department of Justice*, 698 F.2d 259, 269 (6th Cir.1983). By demonstrating that the requested information was obtained during the course of a law enforcement investigation, the FBI raises a presumption that the information was obtained from a confidential source.[7]

---

7. We note that the Supreme Court has endorsed categorical determinations regarding the availability of Exemption 7 "when a case fits into a genus in which the balance characteristically tips in one direction." *See United States Depart-*

*ment of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 776, 109 S.Ct. 1468, 1483, 103 L.Ed.2d 774 (1989). In *Reporters Committee*, the Court stated that "the congressional requirement of a specific showing of

*See Schmerler,* 900 F.2d at 337. One seeking disclosure of the information may overcome this presumption in favor of confidentiality by demonstrating that it would be unreasonable to infer from the surrounding circumstances that confidentiality had been extended to the source. *Id.*

■■■ In the present case, the parties agree that the FBI obtained the information withheld by the Government pursuant to Exemption 7(D) in the course of a criminal investigation. Therefore, the Government is entitled to a presumption that the information was obtained from a confidential source. There is no evidence in the record to rebut this presumption; thus, we hold that the sources who provided information to the FBI during the course of its investigation of Nadler, including the public official who first brought to the Government's attention the allegation that Nadler had accepted a bribe, were confidential sources. Since the FBI's sources were confidential, the Government properly relied upon Exemption 7(D) to withhold the identities of its sources as well as all of the information provided solely by them. *See L & C Marine Transport,* 740 F.2d at 924–25.[8]

**B.**

■■■ The Government relies also upon Exemption 7(C) to justify withholding the names of persons interviewed during its investigation of Nadler and argues that the district court misconstrued that exemption in ordering disclosure. Exemption 7(C) authorizes an agency to withhold records or information compiled for law enforcement purposes to the extent that revealing the information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Since Exemption 7(C) allows withholding only if an invasion of personal privacy is *unwarranted,* a court considering the applicability of the Exemption must balance the individual's privacy interest against the public interest in disclosure. *United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 762, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989); *see also L & C Marine Transport,* 740 F.2d at 922.

The Government argues that the mention of a person's name in connection with an FBI investigation may be embarrassing, humiliating, and stigmatizing to that person. Further, the Government argues, disclosure of the names requested in this case would shed little light on the government's

harm does not prevent determinations of likely harm with respect to prehearing release of particular categories of documents." *Id.* at 777, 109 S.Ct. at 1483 (quoting *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 249, 98 S.Ct. 2311, 2330, 57 L.Ed.2d 159 (1978) (Powell, J., concurring in part and dissenting in part)). Similarly, the congressional requirement of a specific showing of confidentiality does not prevent a categorical determination that sources in an FBI criminal investigation are presumptively confidential. *See also FTC v. Grolier Inc.,* 462 U.S. 19, 28, 103 S.Ct. 2209, 2215, 76 L.Ed.2d 387 (1983) ("Only by construing [Exemption 5] to provide a categorical rule can the Act's purpose of expediting disclosure by means of workable rules be furthered.").

**8.** In addition to its failure to consider the factors that motivated Congress to enact Exemption 7(D), and thus to give Exemption 7(D) "meaningful reach," the district court made two other errors of note. As part of its rationale for compelling disclosure of the information that the Government sought to continue to withhold under Exemption 7(D), the district court cited its determination that much of the information that the Government has withheld had been

discussed at length in the newspapers. We note first that the district court was factually incorrect; most of the information that the Government has withheld from Nadler has never been discussed in the press. More importantly, the district court erred in applying the law; the subsequent disclosure of confidential information does not affect its confidential status under Exemption 7(D). *Brant Constr. Co. v. EPA,* 778 F.2d 1258, 1265 n. 8 (7th Cir.1985).

The district court also attempted to bolster its order compelling disclosure by noting that the Government had not shown any circumstances in this case warranting retention of the confidential sources or confidential information. The court erred to the extent that it undertook to balance the desirability of disclosure of confidential information against the Government's need to withhold the information. Once a source has been found to be confidential, Exemption 7(D) does not require the Government to justify its decision to withhold information against the competing claim that the public interest weighs in favor of disclosure. *Schmerler v. FBI,* 900 F.2d 333, 336 (D.C.Cir.1990).

activities; thus, the invasion of privacy that would result from disclosure would be unwarranted.

The district court rejected the Government's arguments and ordered disclosure. We find the district court's analysis to be seriously flawed. Moreover, for the reasons discussed below, we hold that the Government properly withheld, under Exemption 7(C), the names of those whom it interviewed during its investigation of Nadler.

■ The district court erred initially by analyzing the Government's Exemption 7(C) claim under the version of the FOIA that existed before Congress amended it in 1986. The court stated that Exemption 7(C) enabled the Government to withhold records compiled for law enforcement purposes but "only to the extent that the production of such records *would* ... constitute an unwarranted invasion of personal privacy." (Emphasis added.) Prior to the 1986 amendment, Exemption 7(C) applied to disclosures that "would constitute" an invasion of personal privacy. In 1986, however, Congress amended Exemption 7(C) by substituting the phrase "could reasonably be expected to constitute" for the phrase "would constitute." The Supreme Court has noted that this substitution

represents a considered congressional effort "to ease considerably a Federal law enforcement agency's burden in invoking [Exemption 7]".... [Thus,] the stricter standard of whether such disclosure "would" constitute an unwarranted invasion of [personal] privacy gives way to the more flexible standard of whether such disclosure "could reasonably be expected to" constitute such an invasion.

*Reporters Committee*, 489 U.S. at 756 n. 9, 109 S.Ct. at 1473 n. 9 (quoting 132 Cong. Rec. S16,504 (daily ed. Oct. 15, 1986) (statement of Sen. Hatch)). Since the 1986 amendment, "the Government need not 'prov[e] to a certainty that release will lead to an unwarranted invasion of personal privacy....' It need only demonstrate a 'reasonable' expectation of such an invasion." *Keys*, 830 F.2d at 346 (quoting *Reporters Committee for Freedom of the Press v.*

*Department of Justice*, 816 F.2d 730, 738 (D.C.Cir.1987)).

■ The district court erred again by requiring the Government to make a separate showing as to the applicability of Exemption 7(C) to each particular person identified in its records. The court held that to apply a categorical analysis to the Government's Exemption 7(C) claims "would be treating the word 'unwarranted' as set forth in [Exemption 7(C)] as meaningless." The Supreme Court has held otherwise. In *Reporters Committee*, the Court held that when balancing the public interest in disclosure against the interests that Congress intended to protect under Exemption 7, a court need not balance ad hoc; rather, under appropriate circumstances, the court may balance categorically. *Reporters Committee*, 489 U.S. at 779, 109 S.Ct. at 1483.

*Reporters Committee* involved a FOIA request for the criminal record or "rap sheet" of an individual allegedly linked to organized crime and to the corruption of a public official. The court found that an individual's privacy interest in maintaining the obscurity of his criminal record will always be high. *Id.* at 780, 109 S.Ct. at 1485. Further, the court found that when the individual whose criminal record is sought is a private citizen, the public interest in learning the contents of the individual's criminal record "is at its nadir." *Id.* Thus, the Court held "as a categorical matter" that a request by a third party for the criminal record of a private citizen "can reasonably be expected to invade that citizen's privacy" and when the third party seeks no information about the functioning of the government "the invasion of privacy is 'unwarranted.'" *Id.*

The public and privacy interests in the present case are, of course, different from those in *Reporters Committee*. Nevertheless, the district court erred in failing to apply the broader holding of *Reporters Committee*—where the public and privacy interests that affect the balancing under Exemption 7(C) are the same for all the information withheld, the Government's proof applies equally to all the contested

records. *Id.* at 779, 109 S.Ct. at 1483; *see also Keys,* 830 F.2d at 347–48 (rejecting the argument that "generic assertions of Exemption 7(C) are simply impermissible"). The Government asserts, and we agree, that the privacy interest in this case is identical for each name the Government seeks to withhold; moreover, the public interest in disclosure, whatever it may be, is the same for each name. Thus, categorical balancing is appropriate in this case.

▮ We begin balancing the competing interests in the case at hand by examining the privacy interest that the Government asserts disclosure would infringe. The privacy interest that Exemption 7(C) protects from disclosure encompasses not only the intimate details of an individual's life but also "information about an individual which he could reasonably assert an option to withhold from the public at large because of its possible adverse effects upon himself or his family." *L & C Marine Transport,* 740 F.2d at 923 (quoting Attorney General Levi in his memorandum on the 1974 Amendments to the FOIA, Freedom of Information Act and Amendments of 1974 (P.L. 93–502), Source Book: Legislative History, Texts and Other Documents at 519–20 (Joint Comm.Print 1975)). This court has recognized that a source in a government investigation has a "substantial privacy interest" in keeping his participation in the investigation private. *Id.* at 922. Further, we note that the mention of a person's name in the context of a law enforcement investigation "will engender comment and speculation and carries a stigmatizing connotation." *Branch v. FBI,* 658 F.Supp. 204, 209 (D.D.C.1987). Because of the potential for stigmatization, "[E]xemption 7(C) takes particular note of the 'strong interest' of individuals, whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly with alleged criminal activity.'" *Dun-*

*kelberger v. Department of Justice,* 906 F.2d 779, 781 (D.C.Cir.1990) (citation omitted). Moreover, disclosure of a source's identity might subject him to unnecessary questioning or harassment by those who look unfavorably upon law enforcement officials or by private litigants in civil suits incidentally related to the investigation. *Cleary,* 811 F.2d at 424. Indeed, disclosure of a source's identity might lead to litigation against the source himself.[9] In light of the potential for harassment, intrusion, and stigmatization resulting from disclosure of an individual's connection with a criminal investigation, we conclude that "persons involved in FBI investigations—even if they are not the subject of the investigation—'have a substantial interest in seeing that their participation remains secret.'" *Fitzgibbon v. CIA,* 911 F.2d 755, 767 (D.C.Cir.1990) (citation omitted).

On the other side of the scale is the public interest in disclosure of the requested information. The information that Nadler seeks to obtain and the Government seeks to withhold pursuant to Exemption 7(C) consists of names and other identifying information pertaining to individuals whom the FBI interviewed during its investigation. Nadler points to the fact that the investigation involved alleged bribery by a public official and concludes that "no more public interest can be conceived." The district court found a "paramount public interest in uncovering the facts of the case." We find that the public interest in disclosure of the information is insubstantial.

▮ Only the interest of the general public, and not that of the private litigant, is relevant to our inquiry. *Kiraly v. FBI,* 728 F.2d 273, 279 (6th Cir.1984). Thus, the fact that Nadler's motive for seeking the information is personal does not enter into our balancing process; rather, we must

---

9. Nadler brought this suit principally to obtain information regarding the identity of the source who informed Mann of the alleged bribe. In his brief to this Court in *Nadler v. Mann,* 951 F.2d 301 (11th Cir.1992), Nadler alleges that "Mann, either by himself or with others who Nadler to this date has been deprived of dis-

covering through the United States Government's and Mann's interposition, caused public dissemination of these falsehoods for the purpose of injuring Nadler in his reputation and humiliating and embarrassing him." Brief of Appellant Joseph M. Nadler at 7, 11th Cir. No. 90–5383. An inference that Nadler seeks disclo-

look for a coincidental public purpose. *Id.* The relevant public purpose is coextensive with the FOIA's basic purpose—"to open agency action to the light of public scrutiny." *See Reporters Committee*, 489 U.S. at 772–73, 109 S.Ct. at 1481 (citation omitted); *see also Fitzgibbon*, 911 F.2d at 767. Disclosure of the requested information is in the public interest only if it furthers the public's statutorily created "right to be informed about 'what their government is up to.'" *See Reporters Committee*, 489 U.S. at 773, 109 S.Ct. at 1481.

The information that Nadler seeks will not significantly serve this public purpose. Disclosure of the identities of the FBI's sources will disclose a great deal about those sources but in this case will disclose virtually nothing about the conduct of the government. Enabling the public to learn about the conduct of private citizens is not the type of public interest the FOIA was intended to serve. *See id.* at 773, 109 S.Ct. at 1481 (the FOIA's "purpose ... is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct").

Moreover, we reject Nadler's argument that his request furthers the public interest since disclosure in this case will enable the public to assess the thoroughness of the FBI's investigation. Nadler's justification would apply to any law enforcement investigation and if accepted as reason enough to compel disclosure would swallow Exemption 7(C) whole. *See Miller*, 661 F.2d at 630. Under circumstances not present here, the public interest in assessing the completeness of a criminal investigation could outweigh the privacy interest of those interviewed in the course of the investigation. In the instant case, however, there has not been a showing or even an allegation that the FBI failed to perform adequately its investigative function; thus, we conclude that the public's interest in investigating the FBI's performance is negligible. *Accord id.* Since the privacy in-

terest of those named in the withheld documents is substantial while the public interest in disclosure of the information is not, we hold that the Government properly utilized Exemption 7(C) to withhold the names of those connected to its investigation.

### C.

██ Finally, the Government relies upon FOIA Exemption 5 to support withholding three additional documents.[10] Exemption 5 creates an exemption from the FOIA's disclosure requirements for "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption incorporates into the FOIA all of the normal civil discovery privileges that the Government enjoys under the relevant statutory and case law. *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799, 104 S.Ct. 1488, 1492–93, 79 L.Ed.2d 814 (1984). The test that we apply under Exemption 5 "is whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance." *FTC v. Grolier Inc.*, 462 U.S. 19, 26, 103 S.Ct. 2209, 2214, 76 L.Ed.2d 387 (1983) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148–49, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975)).

The Government bases its Exemption 5 claim upon two separate privileges; it withheld two documents based upon the "deliberative process" privilege and withheld one additional document based upon the attorney-client privilege. We address both privileges in turn.

██ The deliberative process privilege protects the internal decisionmaking processes of the executive branch in order to safeguard the quality of agency decisions. *Sears, Roebuck*, 421 U.S. at 150–51, 95 S.Ct. at 1516. Two prerequisites must be met before the Government properly may withhold a document from production pursuant to the deliberative process privi-

---

sure of the sources' identities so that he can file suit against them seems reasonable.

**10.** Inexplicably, the district court's order does not address the Government's Exemption 5

claim. By the terms of the order, however, the Government must produce the documents it withheld pursuant to Exemption 5.

lege. First, the document must be "predecisional," i.e., "prepared in order to assist an agency decisionmaker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184, 95 S.Ct. 1491, 1500, 44 L.Ed.2d 57 (1975). Second, it must be "deliberative," that is, "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C.Cir.1975). Moreover, purely factual material that does not reflect the agency's deliberative process generally is not protected. *Local 3, International Brotherhood of Electrical Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir.1988). Factual material may be withheld, however, when that material is so inextricably connected to the deliberative material that its disclosure would reveal the agency's decision making processes, *Ryan v. Department of Justice*, 617 F.2d 781, 791 (D.C.Cir.1980) (requiring disclosure of facts only if they "do not reveal the deliberative process and are not intertwined with the policymaking process"), or when it is impossible to segregate in a meaningful way portions of the factual information from the deliberative information. *Local 3*, 845 F.2d at 1180 (declining to compel disclosure where stripping documents "down to their bare-bone facts would render them . . . nonsensical").

■ The documents that the Government seeks to withhold under the deliberative process privilege are prosecutive memoranda from an attorney in the Public Integrity Section of the DOJ to his supervising attorney. These documents each include a summary of the investigation and a recommendation as to how the Government should proceed. The bases for the recommendation are spelled out in the memoranda. We hold that these documents are protected by the deliberative process privilege. These memoranda are both predecisional; indeed, a recommendation to a supervisor on how to proceed is predecisional by its nature. Moreover, the junior attorney's opinions and recommendations unquestionably relate to the deliberative process by which the Justice Department determined how to proceed in the investigation of Nadler.

Our conclusion that the memoranda were part of the Government's deliberative process, however, does not end our analysis. Under 5 U.S.C. § 552(b), "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt. . . ." The prosecutive memoranda discussed above contain factual observations that are not themselves exempt from disclosure pursuant to the deliberative process privilege unless they are inextricably "intertwined with the policymaking process." *See Ryan*, 617 F.2d at 791. The memoranda are each only one and one-half pages in length. With documents this short it is especially likely that disclosure of the factual material would reveal also the agency's deliberative process. In this case, however, we need not make that determination. The Government asserts that the factual material contained in the memoranda is exempt from disclosure pursuant to FOIA Exemption 7(D). For the reasons discussed *supra* in part II A, we agree. The memoranda summarize the information provided to the FBI by confidential sources interviewed during the course of a criminal investigation; the Government may withhold this information pursuant to Exemption 7(D).

■ The final document that the Government seeks to withhold consists of three pages of notes written by an attorney at the DOJ. The Government asserts that the attorney work-product privilege brings this document under the protection of Exemption 5. It is settled that Exemption 5 encompasses the work-product rule. *See Sears, Roebuck*, 421 U.S. at 154–55, 95 S.Ct. at 1518. Thus, we need only decide whether the document in question is covered by the attorney work-product privilege.

■ The work-product privilege protects documents that reveal an attorney's mental impressions and legal theories and were prepared by the attorney in contemplation of litigation. *See Hickman v. Taylor*, 329 U.S. 495, 509–10, 67 S.Ct. 385, 393

(1947); Fed.R.Civ.P. 26(b)(3). The privilege applies not only to documents created after litigation has begun but also to documents created in anticipation of litigation. *See Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C.Cir.1987). Moreover, unlike the deliberative process privilege, the work-product privilege encompasses factual materials that are contained in an otherwise privileged document. *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1185–86 (D.C.Cir.1987).

█ After reviewing *in camera* the handwritten notes at issue in this case, we are persuaded that the notes were created in anticipation of litigation against Nadler. Further, we find that the notes reveal the mental impressions and thought processes of the attorney who created them. Thus, the Government properly withheld the attorney's notes under Exemption 5.

### III.

For the foregoing reasons, we reverse the district court's order compelling disclosure and remand this case to the district court for entry of judgment in favor of the Government.

REVERSED and REMANDED.