David N. GORDON, Jr.

v.

Richard THORNBERG, in his capacity as Attorney General of the United States, and William A. Sessions, in his capacity as Director of the Federal Bureau of Investigation.

Civ. A. No. 91–0389 P.

United States District Court, D. Rhode Island.

April 27, 1992.

William T. Murphy, Providence, R.I., David N. Gordon, Jr.

Everett C. Sammartino, Asst. U.S. Atty., Providence, R.I., for Richard Thornberg.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Plaintiff brought this case under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), to force the release of certain Federal Bureau of Investigation ("FBI") Laboratory reports. Defendants have moved for summary judgment. For the reasons discussed below, the Court grants defendants' motion for summary judgment.

### I

In 1983, a Rhode Island state court convicted David N. Gordon, Jr. of first degree arson. Mr. Gordon received a prison sentence of sixty years. In December 1988, Mr. Gordon requested a true certified copy of the chemical analysis performed by the FBI Laboratory in connection with his criminal case.[1] The FBI informed Mr. Gordon in January 1990 that there were thirteen pages of information related to his request, but that twelve pages were being withheld in their entirety under FOIA exemptions 5 U.S.C. § 552(b)(7)(C) and (D). Mr. Gordon appealed this withholding to the Office of Information and Privacy, Department of Justice. In July 1990, plaintiff was informed that the FBI's decision had been affirmed. Mr. Gordon then began

---

1. Evidence at Mr. Gordon's first trial included photographs of blue canvas shoes. These shoes had been sent to the FBI laboratory for analysis; the FBI noted no presence of flammable substances on the shoes. Subsequently, the shoes were sent to the University of Rhode Island's crime laboratory. The URI crime lab found gasoline on the shoes. When the existence the negative FBI lab report became known, the state court granted Mr. Gordon's motion for a mistrial. Mr. Gordon hopes the FBI documents contain additional exculpatory evidence.

this action to compel release of the documents. This Court ordered an *in camera* review of the withheld pages on April 6, 1992.

## II

The Freedom of Information Act guarantees public access to governmental information; it creates a judicially enforceable right to obtain such information unnecessarily shielded by over-zealous government officials. *EPA v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832–33, 35 L.Ed.2d 119 (1973). The FOIA contains nine specifically enumerated exemptions to disclosure, and litigation in this area inevitably centers on the boundaries of these exemptions. The United States Supreme Court has declared that the exemptions are to be narrowly construed, *see United States Dep't of Justice v. Julian*, 486 U.S. 1, 8, 108 S.Ct. 1606, 1611, 100 L.Ed.2d 1 (1988); *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976), to further the favored policy of disclosure. *FBI v. Abramson*, 456 U.S. 615, 630–31, 102 S.Ct. 2054, 2064, 72 L.Ed.2d 376 (1982).

### A. EXEMPTION 7(C)

■ Exemption 7(C) allows the withholding of

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy …

Exemption 7(C) protects personal information contained in law enforcement records. Documents must first be "compiled for law enforcement purposes." The investigative records of law enforcement agencies are inherently "compiled for law enforcement purposes" within the meaning of Exemption 7, and the FBI is unquestionably a law enforcement agency. *Irons v. Bell*, 596 F.2d 468, 475 (1st Cir.1979); *Curran v. Department of Justice*, 813 F.2d 473, 474 (1st Cir.1987).

The second element of Exemption 7(C) requires balancing the public and private interests at stake. *Sands v. Murphy*, 633 F.2d 968, 971 n. 4 (1st Cir.1980); *Providence Journal Co. v. FBI*, 602 F.2d 1010, 1013 (1st Cir.1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 752 (1980). "Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct." *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989).

The names and initials of FBI Agents and support personnel, the names and identifying data for local law enforcement personnel, and the names and identifying data for any third parties in the investigation were withheld under Exemption 7(C). Courts have rarely found any public benefit in disclosing this type of information.

One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.

*Nix v. United States*, 572 F.2d 998, 1006 (4th Cir.1978). *See also New England Apple Council, Inc. v. Donovan*, 725 F.2d 139 (1st Cir.1984).

The Supreme Court, in *Reporters Committee*, advanced the idea of "categorical balancing" under Exemption 7(C). Exemption 7(C) protects the entire category of law enforcement personnel mentioned in routine investigations "without regard to the individual circumstances." *Reporters Committee*, 489 U.S. at 780, 109 S.Ct. at 1485. Even without a blanket approach to Exemption 7(C), the rationale for protecting this information seems clear. There is no allegation or evidence that FBI Agents have acted improperly. The balancing of public interest against private concerns le-

ans heavily toward privacy; the public interest would not be significantly served by the disclosure of these names, initials, and identifying data.

The deletion of third party names and identification is also proper. The release of information concerning another individual clearly constitutes an invasion of privacy. "Exemption 7(C) takes particular note of the 'strong interest' of individuals, whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly with alleged criminal activity.'" *Dunkelberger v. Department of Justice*, 906 F.2d 779, 781 (D.C.Cir.1990) (citation omitted). Additionally, "[a]n individual does not lose his privacy interest under 7(C) because his identity ... may be discovered through other means." *L & C Marine Transp., Ltd. v. United States*, 740 F.2d 919, 922 (11th Cir.1984). Mr. Gordon may be aware of the identification of a third party in these reports, but that awareness does not waive the Exemption 7(C) protection. *See Larson v. Executive Office for the United States Attorneys*, No. 85–2575, 1988 WL 285732, n. 6 (D.D.C. Nov. 22, 1988) ("[T]he fact that the [requester] might know who testified against him ... does not justify release of documents that may or may not contain similar information."). After reviewing the withheld documents, the Court agrees with defendants that the information falls within Exemption 7(C).

## B.  EXEMPTION 7(D)

█ The bulk of the information withheld by the FBI came under Exemption 7(D). Exemption 7(D) permits the withholding of

> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency ... and, in the case of a record compiled by criminal law enforcement authority in the course of a crimi-

nal investigation ... information furnished by a confidential source ...

Under Exemption 7(D), the district court does not perform a balancing test. *Irons v. FBI*, 880 F.2d 1446, 1449 (1st Cir.1989); *Curran*, 813 F.2d at 474.

The government must demonstrate that the sources were indeed confidential. The word "confidential," as used in Exemption 7(D), means provided in confidence or trust; neither the information nor the source need be "secret." *Irons*, 880 F.2d at 1448; *Keeney v. FBI*, 630 F.2d 114, 119 n. 2 (1980). The First Circuit has held that trial testimony does not affect the confidentiality of information from a confidential source. *Irons*, 880 F.2d at 1456–57; *see also Schmerler v. FBI*, 900 F.2d 333, 339 (D.C.Cir.1990).

"Absent evidence to the contrary, 'promises of confidentiality are inherently implicit when the FBI solicits information.'" *Schmerler*, 900 F.2d at 337 (quoting *Keys v. Department of Justice*, 830 F.2d 337, 345 (D.C.Cir.1987); *Nadler v. Department of Justice*, 955 F.2d 1479, 1484 (11th Cir. 1992). When a state law enforcement agency sends material to an FBI lab for testing, confidentiality is "inherently implicit." *See Hopkinson v. Schillinger*, 866 F.2d 1185, 1222 (10th Cir.1989).

Additionally, the information does not have to identify the confidential source; it simply must have been provided by the source. " '[T]he availability of Exemption 7(D) depends not upon the factual contents of the documents sought, but upon whether the *source* was confidential and the information was compiled during a criminal investigation.'" *Shaw v. FBI*, 749 F.2d 58, 61 (D.C.Cir.1984) (emphasis in original) (quoting *Weisberg v. Department of Justice*, 745 F.2d 1476, 1492 (D.C.Cir.1984)).

Congress enacted Exemption 7(D) to ensure that the FOIA did not hinder valid law enforcement activity. *See Parker v. Department of Justice*, 934 F.2d 375, 380 (D.C.Cir.1991). The FBI interacts with State, local, and foreign law enforcement agencies on a daily basis.[2] These relation-

---

**2.**  28 C.F.R. § 0.85(g) authorizes the FBI Labo-   ratory "to provide, without cost, technical and

ships often involve an element of mutual dependence, and the traditional understanding is that all information shared will remain confidential. Exemption 7(D) applies to information gathered for federal law enforcement purposes *and* FBI laboratory tests performed at the request of local law enforcement authorities. One might feel that these particular lab results do not merit FOIA protection; however, all information from another agency must be protected to provide the confidence necessary to law enforcement cooperation. The Court agrees with defendants that these documents fall under Exemption 7(D).

### III

■ Summary judgment is a valid tool for the resolution of FOIA cases, especially where there has been *in camera* review of the contested documents. "[S]ummary judgment is available to the defendant in an FOIA case when the agency proves that it has fully discharged its obligations under the FOIA after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Miller v. Department of State,* 779 F.2d 1378, 1382 (8th Cir.1985).

After considering affidavits submitted by plaintiff and defendants and the *in camera* review of the documents, the Court finds no genuine issue as to material facts. Viewing the facts and inferences in the light most favorable to Mr. Gordon, the Court finds no FOIA violation; defendants are entitled to judgment as a matter of law. Reflecting on the material contained in these documents, the Court is not troubled by this decision. Defendants' motion for summary judgment is granted; the case is dismissed with prejudice.

SO ORDERED.

scientific assistance ... for all duly constituted law enforcement agencies ... which may desire

to avail themselves of the service."