**Joseph A. MAY, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, United States of America, Defendant.**

**No. 98–4042–CV–C–5.**

United States District Court, W.D. Missouri, Central Division.

Aug. 6, 1999.

Joseph A. May, Jefferson City, MO, pro se.

R. Scott Clarke, U.S. Department of Justice, Washington, Judith M. Strong, U.S. Attorney's Office, Kansas City, MO, for Internal Revenue Service.

## MEMORANDUM AND ORDER

LAUGHREY, District Judge.

Pending before the Court is Defendant Internal Revenue Service's ("IRS") Motion for Summary Judgment. For the reasons set forth below, the Motion is granted.

## I. Introduction and Background[1]

On May 20, 1996, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, May submitted a request to the Kansas–Missouri District Disclosure Office of the IRS located in St. Louis, Missouri. In the request, May sought twelve categories of documents related to a criminal investigation of him conducted by the IRS. The categories of documents were as follows:

1. All files and documents relative to the criminal referral and investigation of Joseph A. May located at Treasury/IRS 90.001, Chief Counsel Criminal Tax Case Files.

2. All litigation case files and documents concerning Joseph A. May for any tax years located at Treasury/IRS 26.011, Litigation Case/ Files.

3. All files and documents relative to and/or concerning Joseph A. May for any tax years located at Treasury/IRS 46.002, Case Management and Time Reporting System, Criminal Investigation Division.

4. All files and documents relative to and/or concerning any informant against Joseph A. May for any tax years; Treasury/IRS 46.003, Confidential Informants, Criminal Investigation Division.

5. All files and documents relative to and/or concerning Joseph A. May for any tax years located at Treasury/IRS 46.004, Controlled Accounts (Open and Closed).

6. All files and documents relative to and/or concerning Joseph A. May for any tax years located at Treasure/IRS 46.009, Centralized Evaluation and Processing of Information Items (CEPIIs), Criminal Investigation Division.

7. All files and documents relative to and/or concerning Joseph A. May

---

1. In the following recitation of facts, the Court has viewed the evidence in the light most favorable to the Plaintiff, Joseph May, and has given him the benefit of all reasonable factual inferences. *See, Christopher v. Adam's Mark Hotels,* 137 F.3d 1069, 1070 (8th Cir.), *cert. denied,* 525 U.S. 821, 119 S.Ct. 62, 142 L.Ed.2d 49 (1998). The Court has, however, deemed admitted those facts set forth by the IRS in its statement of material facts that May has not specifically controverted. *See,* Local Rule 56.1(a).

for any tax years located on the premises of or in the possession of Special Agents Gary A. Marshall, Anthony Hutcherson, and Kerri Reiter, including but not limited to the Criminal Investigation Division, 5800 East Bannister Road, # 302, Kansas City, Missouri 64134, and 2013 N. Salem Drive, Independence, MO 64058.

8. All Investigation History sheets relative to and/or concerning Joseph A. May for any tax years located on premise of or in the possession of Special Agents Gary A. Marshall, Anthony Hutcherson, and Kerri Reiter.

9. All transcripts of verbatim statements, affidavits, memoranda of interviews, and Special Agent's notes related to and/or concerning Joseph A. May for any tax year.

10. All Special Time and Attendance Worksheet(s) for Special Agents Gary A. Marshall, Anthony Hutcherson, and Kerry Reiter, which concern the investigation of Joseph A. May.

11. All diaries or other similar documents concerning the investigation of Joseph A. May for any tax year in the possession of Special Agent Gary A. Marshall, Anthony Hutcherson, and Kerry Reiter.

12. All computerized records concerning the investigation of Joseph A. May.

2. Hines has been a Disclosure Officer for the IRS since December 1986. Her responsibilities include processing FOIA and Privacy Act requests and coordinating searches for documents requested under such Acts.

3. Marshall is a Special Agent in the Kansas–Missouri District Criminal Investigation Division Office ("CID"), Internal Revenue Service. He has held this position since May 1993, and has been employed by the IRS for approximately 25 years. His responsibilities as a Special Agent include the investigation of alleged criminal violations of the internal revenue laws and related offenses. On August 6,

By letter dated June 12, 1996, May clarified that his request for information relating to "all tax years" was limited to tax years 1985 through 1994.

May's request was processed by Disclosure Officer Karen Hines.[2] Due to the fact that the Disclosure Office was unable to respond to the request in the allotted ten (10) day statutory time period, the Office, by letter dated June 28, 1996, sought a voluntary extension of time. The letter notified May that if he did not grant the extension, he could consider the letter a denial of his request and could appeal the action. May did not agree to the extension and he sent an administrative appeal letter on July 20, 1996.

During this time period, in order to ascertain the existence and location of responsive documents, on July 15 and 22, Hines contacted Special Agent Gary Marshall, the agent who was assigned to the criminal investigation of May.[3] Due to the broad nature of May's request, it was necessary for Hines to contact several different offices and/or departments. Marshall informed Hines that there were thirteen (13) boxes of files pertaining to May in the CID's Kansas City Office.[4] Marshall also informed her that additional documents may be located in the Office of the Chief, CID, and in May's local Service Center. Hines also spoke with Bob Fowler, an attorney with the Office of Kansas–Missouri Associate District Counsel. He stated that his office had a tax court file which would not be responsive to May's request,

1990, CID opened an investigation into May's possible violations of the Internal Revenue Code for tax years 1985–1989. CID formally closed its investigation in January 1994. Marshall was assigned as the lead agent on the investigation.

4. Although Marshall originally informed Hines that there were fourteen (14) boxes of files in CID's Kansas City office, he made such statement based upon his recollection. Since that time, Marshall checked and noted that there were actually thirteen (13) boxes of documents.

and a criminal tax file of a case relating to May from the mid–1990s, which May had been given access to previously. Fowler sent the files to the Disclosure Office for copying.

By letter dated July 26, 1996, the Disclosure Office requested a second extension of time to process May's request. May responded by letter dated August 6, 1996, that he would not agree to the extension and that he would resubmit his appeal. On August 27, 1996, Georgia Predmore, the individual processing May's appeal, contacted Hines and inquired when her Office would have a final determination on which documents could be released to May. Hines informed Predmore that she could probably get a letter out to May within the next 3–4 weeks, but that it could take anywhere from 2–6 months to close the case, depending upon the number of documents needed to be copied and reviewed.

On September 4, 1996, Disclosure Litigation responded to May's administrative appeal. The letter stated that because the Disclosure Office had located a large volume of records and intended to send May an interim response by September 27, 1996, they would hold the appeal in abeyance. The letter indicated that if, after reviewing the Disclosure Office's final response, May still wished to pursue an administrative appeal, he should contact Disclosure Litigation.

On September 16, 1996, the Disclosure Office sent a letter to May regarding the status of his request. In the letter, the Office indicated that an initial search had revealed several hundred documents and that an estimated cost for copying would be One Thousand Fifty Dollars ($1,050.00). The Disclosure Office stated that it required advance payment prior to making the copies. May transmitted a bank money order for $1,050 for copying the documents on September 20, 1996. By letter dated September 30, 1996, the Disclosure Office acknowledged receipt of the money order and informed May that it would take several months for the Disclosure Office to review and copy the documents. The Disclosure Office advised May that it would provide a status report to him every 30 days.

On October 8, 1996, Hines spoke with Marshall. During the conversation, Hines realized that she had miscalculated the copying costs. Hines determined that it would cost May an additional Five Hundred and Seventy–Five Dollars ($575.00) to copy the documents. When she informed May of the error, May stated that after speaking with his attorney, he would like the opportunity to review the documents prior to further copying taking place. After several attempts to set a date, May finally reviewed the documents on December 6, 1996, in Kansas City, after meeting with Marshall and Special Agent Clark Gaywood. By letter addressed to the Disclosure Office dated December 11, 1996, May stated that he would like to receive copies of all the documents except for correspondence between himself and the IRS.

On January 9, 1997, Marshall telephoned Hines and indicated that CID had completed copying the documents. Hines received the documents on January 18, 1997. Over the course of the next year, the Disclosure Office reviewed the documents to determine releasability. During this process, Hines conferred with Marshall and Fowler concerning the disclosability of certain information contained in the documents. The documents contained in the CID files included information relating to motor vehicle records and tax returns of third party witnesses, testimony before the grand jury, etc.

Various communications were had concerning the status of the documents, and by letter dated January 23, 1998, Hines provided May with a final response to a previous FOIA request he had made, and indicated that the Disclosure Office had hoped to have a final response regarding his current request within 4–6 weeks. On February 13, 1998, May filed the instant

lawsuit seeking the production of the records.

By letter dated March 10, 1998, the Disclosure Office stated that it had finished processing May's request and had copied 12,469 pages to be released to him. The copying fees totaled $1,855.35, from which the $1,050.00 advance was subtracted. This left a balance owed of $805.35. The Disclosure Office indicated that the IRS's final response, together with copies of records to be released and an explanation of records to be withheld, would be issued as soon as payment was received. May did not respond to the letter. On June 8, 1998, Hines spoke to Margaret Martin, an attorney with the Office of Chief Counsel. Martin inquired if May had paid the amount owed for the documents and if the Special Agents had sent their diaries and timesheets to the Disclosure Office. Hines informed her that neither action had occurred.[5] Martin stated that it was necessary to obtain the documents and review them for possible release. Between mid-June and September 1998, the Disclosure Office reviewed, edited and copied the diaries and timesheets so that only information pertaining to May was visible on the documents.

On October 2, 1998, the Disclosure Office received a letter from May and a check for $805.35 for the remaining copying costs. By letter dated October 5, 1998, the Disclosure Office sent to May approximately 11,564 pages of documents released in full and 2,214 pages of documents released in edited form. There were approximately 1,903 pages of documents that the IRS allege were protected from disclosure by various exemptions in FOIA and such documents were not released to May. Additionally, the Disclosure Office indicated that still under consideration for release were 15 pages that fell in the jurisdiction

of the IRS's Inspection Office, and 13 pages of documents which fell in the jurisdiction of the U.S. Probation Office and the Federal Bureau of Prisons.

On November 17, 1998, Disclosure Litigation transmitted to the Department of Justice for further release to May, approximately 1,154 pages of documents to be released in full, and approximately 363 pages of documents to be released in part. These documents were not among those originally considered by the Disclosure Office.

As reflected above, May filed a lawsuit against the IRS seeking declaratory and injunctive relief under FOIA and the Privacy Act, 5 U.S.C. § 552a. The IRS now seeks summary judgment on May's claims. Pursuant to 5 U.S.C. § 552(a)(4)(B), the Court ordered the IRS to submit the documents which were withheld from May, for an *in camera* inspection by the Court.[6] Based upon the Court's review of the documents, as well as the briefs submitted by the parties, the Court finds that the IRS' Motion for Summary Judgment should be granted.

## II. Applicable Standard

■ "Summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA." *Miller v. United States Dep't of State,* 779 F.2d 1378, 1382 (8th Cir.1985). "In order to discharge this burden, the agency 'must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements.'" *Id.* (*quoting National Cable Television Ass'n, Inc. v. Fed. Communications Comm'n,* 479 F.2d 183, 186 (D.C.Cir. 1973)). The Court must construe the underlying facts, and the inferences drawn

---

5. In her affidavit, Hines stated that she did not believe that the diaries and timesheets had to be produced because the information was not maintained or retrievable by May's name.

6. In its *in camera* submission, the IRS highlighted the portion of the documents withheld in part, and placed a large "X" over the documents withheld in full.

therefrom, in the light most favorable to the FOIA requester. *Pollack v. U.S. Bureau of Prisons,* 879 F.2d 406, 409 (8th Cir.1989); *Miller,* 779 F.2d at 1382. "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *United States Dep't of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

## III. Analysis and Discussion

### A. Adequacy of the Search

█ "The adequacy of an agency's search for requested documents is judged by a standard of reasonableness, i.e., 'the agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Miller,* 779 F.2d at 1383 (*quoting Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983)). *See also, Manna v. U.S. Dep't of Justice,* 832 F.Supp. 866, 874 (D.N.J.1993), *aff'd* 51 F.3d 1158, *cert. denied,* 516 U.S. 975, 116 S.Ct. 477, 133 L.Ed.2d 405 (1995) (*quoting Truitt v. Dep't of State,* 897 F.2d 540, 542 (D.C.Cir.1990)). And while the search must be reasonable, "it does not have to be exhaustive." *Miller,* 779 F.2d at 1383. "The issue is not whether any further documents might conceivably exist but whether the government's search for responsive documents was adequate.'" *Manna,* 832 F.Supp. at 874 (*quoting Truitt,* 897 F.2d at 542). *See also, Meeropol v. Meese,* 790 F.2d 942, 956 (D.C.Cir.1986) ("[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request.")

█ In order to prove the reasonableness of its search, an agency may rely upon affidavits of responsible agency officials, provided that such affidavits are "rel-

atively detailed, nonconclusory, and submitted in good faith." *Miller,* .779 F.2d at 1383 (*citing Goland v. Central Intelligence Agency,* 607 F.2d 339, 352 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980)). Once the agency meets its burden of showing a reasonable search, i.e. "that it was especially geared to recover the documents requested," then the burden shifts to the requester to rebut the evidence by showing that the search was not, in fact, conducted in good faith. *Miller,* 779 F.2d at 1383.

In the instant case, in order to demonstrate the adequacy of its search, the IRS has submitted Affidavits from Hines, Marshall and Martin regarding the steps each of them took with respect to May's FOIA request. The affidavits specifically outline each person's efforts to locate documents that were responsive to May's request. Hines contacted several people regarding the request, including Marshall, Fowler and Ken Riche, Chief, CID, Kansas–Missouri District. She requested records from CID's Kansas City Office, the Office of Kansas–Missouri Associate District Counsel and the Office of the Chief, CID. The IRS ultimately produced over thirteen thousand pages of documents.

█ In his Opposition, May challenges the adequacy of the IRS's search on the sole basis that it failed to produce any Collection Division files in response to his request. May argues that the Collection Division must have responsive files because collection actions, i.e., levies, seizures and/or sales, have been taken against him for the tax years at issue in his request. However, as pointed out by the IRS, the record reveals that May's request did not include Collection Division files. Rather, May requested, "All *litigation* case files and documents concerning Joseph A. May for any tax years located at Treasury/IRS 26.011, Litigation Case/Files." (*emphasis added*). The record system specifically identified by May, i.e., "Treasury/IRS 26.011," covers litigation files which concern collection of federal taxes, and not

administrative collection files. Based upon May's specific designation, the IRS produced all of the litigation case files, but determined, as stated in Hines' Affidavit, that the Collection Division did not have any responsive files.

The Affidavits describing the IRS's search procedures are sufficient in that they are detailed in their description of the files searched and of the search procedures utilized. The affidavits further reveal that the IRS searched for the requested documents where they might reasonably be found. Based upon the affidavits, and the fact that May has failed to make any showing of bad faith, the Court finds that the IRS is entitled to summary judgment on the issue of the adequacy of the search.

## B. Applicability of FOIA Exemptions from Disclosure

■ Upon receipt of a request made pursuant to FOIA, a government agency is required to promptly release the requested documents, unless the documents fall within one of the specific statutory exemptions. *See, Miller,* 779 F.2d at 1382–83. The IRS bears the burden of justifying its decision to withhold the requested documents. *See,* 5 U.S.C. § 552(a)(4)(B). A district court may grant summary judgment in favor of the government in a FOIA case only if the "affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that [the] material withheld is logically within the domain of the exemption claimed.'" *PHE, Inc. v. Dep't of Justice,* 983 F.2d 248, 250 (D.C.Cir.1993) (*quoting King v. United States Dep't of Justice,* 830 F.2d 210, 217 (D.C.Cir.1987)).

### 1. Exemption under 15 U.S.C. § 552(b)(7)(C)

The IRS is withholding a variety of documents pursuant to the exemption set forth at § 552(b)(7)(C) which provides as follows:

This section [of FOIA] does not apply to matters that are:

\*    \*    \*    \*    \*    \*

■ (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(7)(C). Application of the exemption requires a finding that (1) the documents were "compiled for law enforcement purposes," and (2) their production could invade personal privacy. With respect to the personal privacy prong, the district court is required to balance the individual's right of privacy against the public interest involved in the case. *See, Reporters Comm.,* 489 U.S. at 762, 109 S.Ct. 1468; *Alirez v. Nat'l Labor Relations Bd.,* 676 F.2d 423, 426 (10th Cir. 1982). The public interest to be considered in the analysis is that which FOIA was enacted to protect, namely, the right of citizens to know "what their government is up to." *Reporters Comm.,* 489 U.S. at 773, 109 S.Ct. 1468.

■ In the instant case, the IRS seeks to withhold information consisting of the names, addresses and other personal or identifying information of third party contacts and witnesses, statements, tax returns and medical records of third party witnesses, correspondence with and/or regarding third party witnesses, documents referencing the tax treatment of certain patient/witnesses' medical expenses, and social security numbers of special agents who worked on the investigation. After reviewing the documents, as well as the Affidavits of Marshall and Martin, the Court is satisfied that the records and documents withheld pursuant to § 552(b)(7)(C) were compiled for law enforcement purposes during the course of the IRS's investigation of alleged criminal violations. *See, Barney v. Internal Reve-*

*nue Serv.*, 618 F.2d 1268, 1272–73 (8th Cir.1980) (Records compiled in the course of an IRS investigation for possible criminal prosecution are deemed to be "compiled for law enforcement purposes.")

Additionally, with respect to the second prong of the test, the Court finds that the release of the information could reasonably be expected to constitute an unwarranted invasion of personal privacy. Exemption (b)(7)(C) has been held to "afford broad privacy rights to suspects, witnesses and investigators." *SafeCard Servs. Inc. v. Securities and Exchange Comm'n*, 926 F.2d 1197, 1205 (D.C.Cir.1991). Courts have recognized an intrusion upon such personal privacy rights where the documents sought to be produced would disclose the identities of parties who have cooperated in an investigation, *see, Cleary v. Federal Bureau of Investigation*, 811 F.2d 421, 424 (8th Cir.1987); *White v. Internal Revenue Serv.*, 707 F.2d 897, 902 (6th Cir.1983), or where the statements of the witnesses provide sufficient information such that their identity could be discerned, *see, Alirez*, 676 F.2d at 428. Balanced against these substantial, and at least in part, recognized, privacy interests, the Court finds that the public interest in disclosure in this case is minute. As noted by at least one district court:

> unless there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity, and access to the names [and addresses] of private individuals appearing in the agency's law enforcement files is necessary in order to confirm or refute that evidence, there is no reason to believe that the incremental public interest in such information would ever be significant.

*SafeCard*, 926 F.2d at 1205–06.

In this case, May does not allege that the IRS was engaged in any illegal activi-ty, nor is there any hint of any illegal activity in the documents submitted for *in camera* review. Given the low public interest and the recognized high privacy interests at stake, the balancing weighs in favor of the non-disclosure of the documents. *See, Alirez*, 676 F.2d at 426–27 (Where the "invasion of privacy is serious and there is little or no public interest involved, the information is exempt from disclosure.") [7]

### 2. Exemption under 5 U.S.C. § 552(b)(7)(E)

The IRS is also withholding four (4) pages of documents, in whole or in part, on the basis that such documents were "compiled for law enforcement purposes" and that production of the documents "would disclose techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E). In his Opposition, May affirmatively states that he does not dispute that these pages are exempt from disclosure. Accordingly, these documents are no longer at issue in this case.

### 3. Exemption under 5 U.S.C. § 552(b)(3) in conjunction with 26 U.S.C. § 6103(a) and/or § 552(b)(7)(C).

The IRS is also withholding tax return information of third party taxpayers under the exemption found at § 552(b)(3).[8] The exemption under (b)(3) provides as follows:

> This section [of FOIA] does not apply to matters that are ... specifically exempted from disclosure by statute (other than § 522b of this title), provided that such statute (A) requires that the matters be withheld from the public in such

---

7. The Court notes that the majority of the documents covered by the exemption contained in § 552(b)(7)(C) have already been disclosed, in substantial part, to May, and that the application of the exemption has resulted in only minor redaction of a great number of the documents.

8. As noted by the IRS in its briefing, there is some overlap in this case between the applicability of this exemption and the one contained in § 552(b)(7)(C) discussed above.

a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3). The IRS argues that the tax return documents are specifically exempted from disclosure by statute, namely 26 U.S.C. § 6103. Section 6103(a) mandates that "tax return information" be held confidential subject to disclosure to only certain enforcing/auditing agencies and certain identified individuals who have a "material interest" in the return.[9]

■ Several courts have held that § 6103 qualifies as an exempting statute for purposes of meeting the requirements of § 552(b)(3). *See, Librach v. Federal Bureau of Investigation,* 587 F.2d 372, 373 (8th Cir.1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1222, 59 L.Ed.2d 459 (1979) (Tax return restricted from disclosure under § 1603 falls within exemption under § 552(b)(3).); *DeSalvo v. Internal Revenue Serv.,* 861 F.2d 1217, 1221 (10th Cir.1988) ("Because section 6103 both establishes criteria for withholding information and refers to particular types of matters to be withheld, it satisfies the requirements of section 552(b)(3)(B)."); *Chamberlain v. Kurtz,* 589 F.2d 827, 840 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979) ("[W]e conclude that the provisions of section 6103 dealing with the disclosure of return information to a taxpayer with a material interest therein satisfy the requirements of Exemption [§ 552(b)(3) ]."); *Barney v. Internal Revenue Serv.,* 618 F.2d 1268, 1274 n. 15 (8th Cir.1980) (Noting agreement with analysis set forth in *Chamberlain* regarding the applicability of the exemption.); *Aronson v. Internal Revenue Serv.,* 767 F.Supp. 378, 382 (D.Mass.1991) ("It is well established that § 6103 ... generally qualifies as a statute within the scope of Exemption [§ 552(b)(3)].") Based upon the analysis set forth in the cases cited above, the Court finds that tax return information, as the term is defined in § 6103, is exempt from disclosure under § 552(b)(3). The Court has reviewed the documents which the IRS claims are exempt, and finds that the documents are properly withheld. Additionally, the Court further finds that the tax return documents listed as being withheld under § 552(b)(3), are also exempt pursuant to the "personal privacy" exemption set forth in § 552(b)(7)(C), discussed in greater detail above.

■ The IRS is also withholding, pursuant to § 552(b)(3), seventy-five (75) pages of documents which allegedly relate to the grand jury proceedings concerning May. The claimed exempting statute for such documents is Fed.R.Crim.P.Rule 6(e).[10] The Rule provides that "matters occurring before the grand jury, [shall not be disclosed] except as otherwise provided for in these rules." Fed.R.Crim.P. 6(e)(2). Several courts which have addressed the issue have held that Rule 6(e) meets the requirements of § 552(b)(3). *See, Fund,* 656 F.2d at 869–70 (Witness' names and documents subpoenaed during grand jury proceedings fall within § 522(b)(3).); *Librach,* 587 F.2d at 373 (Comments on grand jury testimony restricted from disclosure under Fed.R.Crim.P. 6(e) fall within § 522(b)(3) exemption.); *Silets v. United States Dep't of Justice,* 945 F.2d 227, 230 (7th Cir.1991), *cert. denied,* 505 U.S. 1204, 112 S.Ct. 2991,

---

9. "Tax return information" is defined under the statute as including any "data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense." 26 U.S.C. § 6103(b)(2)(A).

10. The Court notes that "[a]lthough rules of procedure promulgated by the Supreme Court generally do not qualify as 'statutes' for exemption (b)(3) purposes, Rule 6(e) does so qualify because it was specifically adopted by an Act of Congress." *Senate of the Commonwealth of Puerto Rico on Behalf of Judiciary Comm. v. United States Dep't of Justice,* 823 F.2d 574, 582 n. 23 (D.C.Cir.1987) (*citing Fund for Constitutional Gov't v. Nat'l Archives and Records Serv.,* 656 F.2d 856, 867 (D.C.Cir. 1981)).

120 L.Ed.2d 868 (1992) (Fed.R.CrimP.6(e) meets requirements of § 552(b)(3) such that exemption applies to identities of witnesses who testified before the grand jury and the substance of their testimony.) *See also, Puerto Rico,* 823 F.2d at 582 (Disclosure of "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like" would "tend to reveal some secret aspect of the grand jury's investigation.").

The Court finds that Fed.R.Civ.P. 6(e) is an exempting statute under § 552(b)(3) and accordingly, documents which reflect "matters occurring before the grand jury" are exempt from disclosure. The Court has reviewed the withheld documents, except for the transcript of the grand jury proceedings which was not required to be submitted for review, and finds that the documents, as well as the transcript, are subject to the secrecy requirements of Rule 6(e), and therefore, exempt under § 552(b)(3).

### 4. Exemption under 5 U.S.C. § 552(b)(5)

■ The IRS is withholding twenty-seven (27) pages of documents allegedly pursuant to § 552(b)(5), which provides, in relevant part, that "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" are exempt from disclosure. 5 U.S.C. § 552(b)(5). Courts have interpreted § 552(b)(5) as exempting documents subject to the attorney-client privilege, the attorney work-product doctrine and the governmental deliberative privilege. *See, F.T.C. v. Grolier Inc.,* 462 U.S. 19, 28, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983) (applying exemption to attorney-work product materials); *Mead Data Central, Inc. v. United States Dep't of Air Force,* 566 F.2d 242, 252–53 (1977) (applying exemption to documents which come within the attorney-client privilege); *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168, 184, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975) (applying exemption to predecision-

al memoranda prepared in order to assist an agency decision maker in arriving at his/her decision).

In the instant case, the IRS asserts both the work-product doctrine and the attorney-client privilege as bases for withholding a March 18, 1992, letter authored by the Service District Counsel in which Counsel refers May's case to the Department of Justice for possible criminal prosecution. To determine whether a communication is protected by the work-product privilege, courts examine "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 401 (8th Cir.), *cert. denied,* 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987) (*quoting* 8C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2024, at 198–99 (1970) and *citing Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 604 (8th Cir. 1977), *on reh'g,* 572 F.2d 596, 606 (8th Cir.1978) (en banc)). Documents produced in the ordinary course of business are not privileged. *Simon,* 816 F.2d at 401. The burden of meeting this test belongs to the party seeking to assert the privilege. *See, Rabushka ex rel. United States v. Crane Co.,* 122 F.3d 559, 565 (8th Cir.), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998).

The work-product doctrine was developed to allow attorneys to collect facts and develop opinions for purposes of litigation without having to share this information with opposing parties. The Eighth Circuit explained the policy in these terms:

The primary purpose of the work-product privilege is to ensure that an attorney is not inhibited in the representation of his client by the fear that his files will be open to scrutiny upon demand of an opposing party. Counsel should be allowed to amass data and commit his opinions and thought processes to writing free of the concern that, at some later date, an opposing party may be entitled to secure any relevant work-

product documents merely on request and use them against his client.

*In re Murphy*, 560 F.2d 326, 334 (8th Cir.1977).

The Court has reviewed the letter prepared by District Council and finds that it falls within the protections of the work-product doctrine. The letter clearly indicates that it is being prepared for purposes of pursuing litigation against May, and it sets forth therein the factual basis for the potential prosecution and an analysis of the applicable law. Accordingly, the Court finds the document exempt from disclosure.

The IRS is also withholding a Prosecutorial Memorandum dated May 18, 1992, regarding the possible prosecution of May, on the basis of the work-product doctrine and the deliberative process privilege. The Memorandum was prepared by an Assistant United States Attorney and contains a summary of the evidence gathered together with recommendations as to possible courses of action with respect to the criminal prosecution of May. The Court finds that the document falls within the protections of the work-product doctrine, and accordingly it is exempt from disclosure under § 552(b)(5).

### 5. Segregability

May asserts that the IRS has failed to address in its Suggestions in Support whether or not any of the releasable, but withheld, documents are segregable. Title 5 U.S.C. § 552(b) provides, in relevant part, as follows:

> Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

The IRS admits its oversight and along with its Reply Suggestions, has submitted a Second Declaration from Martin which affirmatively states that the IRS did, in fact, review all of the withheld information, and determined that all reasonably segregable information was released. Due to the fact that the IRS did not address the issue of segregability until the filing of its Reply Suggestions, the Court provided May with the opportunity to respond to the Reply, and May did so respond.

In its *in camera* submission to the Court, the IRS has distinguished the documents withheld in part, i.e., redacted documents, from the documents withheld in whole. Based upon the Court's own review of the documents, the Court finds that the IRS has met its obligations under § 552(b) concerning segregability.[11]

### III. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Defendant's Motion for Summary Judgment [Doc. # 15] is GRANTED.

---

11. Section 552(b) also requires that "[t]he amount of information deleted shall be indicated on the released portion of the record." The IRS complied with this requirement in its submission to the Court, and based upon the fact that May has not alleged that the IRS failed to comply with this requirement in its production to him, the Court assumes that the IRS has met its obligations.